**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

FILED
02 JUL 22 PM 3:50
U.S. ___ ___ ___URT
N.D. OF ___ ___AMA

BRITTANY BENEFIELD, a minor,
suing by and through her mother,
JACQUELINE BENEFIELD,

     PLAINTIFF,

v.                             CASE NO. CV-02-J-734-S

THE BOARD OF TRUSTEES OF
THE UNIVERSITY OF ALABAMA
AT BIRMINGHAM,

ENTERED
JUL 2 2 2002

     DEFENDANT.

## MEMORANDUM OPINION

This case comes before the court on the defendant's motion to dismiss (doc. 5) and motion to strike claim for punitive damages (doc. 6). The court held a hearing on these motions on May 29, 2002 at which both parties were present and represented by their respective counsel. The court heard arguments and has considered the pending motions, the argument and the memoranda of law submitted by the parties.



Because this case is before the court on the defendant's motion to dismiss, the court takes the material factual allegations of the complaint as true.[1]  *See e.g., Summit Health Ltd. v. Pinhas*, 500 U.S. 322, 325, 111 S.Ct. 1842, 114 L.Ed.2d 366 (1991).

## I. Factual Background

Based on the material factual allegations of the complaint, the court finds the facts of this case to be as follows:

The minor plaintiff ("plaintiff") began to attend the University of Alabama at Birmingham (UAB) when she was fifteen years old, pursuant to an academic scholarship awarded to her by UAB.  Complaint at ¶¶ 9, 12, 19.  Prior to her enrollment, the plaintiff and her parents met with Warren Hale (Hale), the Director of Student Housing and Residential Life, and Susan McKinnon (McKinnon), Assistant Vice President for Enrollment Management, seeking assurances that the plaintiff

---

[1]The court does not consider plaintiff's allegations in the complaint of what various UAB personnel "knew" or "believed" as these are not statements of fact.  For example, plaintiff alleges "UAB officials were eager for Benefield to attend school ..." (complaint at ¶ 12); "[t]he fact that such a young student was on campus was common knowledge among ... the campus police" (complaint at ¶ 19); "Hale's attitude" was not to ask girls about their lifestyle (complaint at ¶ 22); UAB officials knew of illegal drinking (complaint at ¶ 24) and sexual exploitation (complaint at ¶¶ 25, 26); UAB did not contact plaintiff's parents "who they knew would be concerned..." (complaint at ¶ 27); "Hale, in an effort to protect the players..." (complaint at ¶ 29); that [p]rotecting the football program was foremost in the minds of these officials" (complaint at ¶ 31); "[f]ootball was too important" (complaint at ¶ 38); UAB officials "out of fear of exposing the 'cash cow' that is college football, chose not to inquire further" (complaint at ¶ 39); and "[a]lthough UAB officials knew that in the case of children an earlier intervention will result in less permanent damage..." (complaint at ¶ 41).  Other allegations of individual's motivations, beliefs and knowledge riddle the complaint as well.  As these are not statements of **fact**, the court has not considered these statements in ruling on the defendant's pending motion.

would receive "special treatment," be watched, and that UAB would provide additional care and protection due to her age. Complaint at ¶ 14. Additionally, the plaintiff's mother inquired whether McKinnon and Hale would contact her if problems arose, and was assured that they would. Complaint at ¶ 15. The plaintiff was informed that she would be housed in Rast Hall and one of her suite mates would be a resident assistant (RA). Complaint at ¶ 16.

During her first quarter of college, the plaintiff achieved a grade point average (GPA) of 3.5. Complaint at ¶ 21. However, sometime in July, 2000, the plaintiff was moved to Blazer Hall, without an RA roommate. There was no monitoring of students by UAB.[2] Complaint at ¶¶ 22, 28. Many football and basketball players also resided in Blazer Hall and initiated conversations with the plaintiff. Complaint at ¶¶ 22, 23. The plaintiff was given beer by football players, which rapidly escalated into the plaintiff becoming the football players "play thing" and was sexually exploited by them and basketball players.[3] Complaint at ¶¶ 24, 25. She further alleges that UAB was aware of illegal drinking, but took no actions to prevent it. Complaint at ¶ 24.

---

[2] The court has taken this allegation as true in accordance with *Summit Health Ltd., supra.* However, the court notes that this is the same residence hall where there apparently was enough monitoring of the plaintiff's activities to confront her about continued violations of curfew. Complaint at ¶ 37; Exhibit B to complaint.

[3] Apparently the football players who initiated conversations with her are not the same ones who offered her beer. Compare complaint at ¶ 23 with complaint at ¶ 24, stating "several other football players" approached her and that as a result of "their encouragement" the plaintiff had her first beer.

Additionally, the plaintiff alleges the UAB football staff, campus police, and school officials were aware of her behavior, but failed to take any action. Complaint at ¶¶ 26, 27.

In August, 2000, the plaintiff was called into a meeting with Hale, Rachel Smith who was the Residence Life Coordinator, and Sergeant Forsyth, a UAB police officer. Complaint at ¶¶ 19, 28; exhibit B to complaint. She was questioned about her sexual activities, but she denied any such behavior, stating that these were just rumors. Complaint at ¶ 28; exhibit B to complaint. Virginia Gauld, Ph.D., Vice President of Student Affairs, contacted plaintiff's parents due to her concern about the plaintiff hosting guests in her room, to which the plaintiff's mother stated the plaintiff could "host any guest she wanted (male or female) because she trusted [plaintiff's] judgment. Exhibit B to complaint. No further action was taken. Complaint at ¶ 28.

Plaintiff alleges that shortly thereafter, Hale told a UAB assistant football coach, Larry Crowe, of what he knew and of possible liability of the football players due to the plaintiff's age. Complaint at ¶ 29. Thereafter, the UAB head football coach, Watson Brown, instructed his players to stay away from the plaintiff. Complaint at ¶ 29. However, the plaintiff's parents were not informed of the plaintiff's sexual exploits and at this time, UAB took no further action to protect the plaintiff. Complaint at ¶¶ 29, 31.

The plaintiff continued to consume alcoholic beverages provided by UAB football and basketball players. Complaint at ¶ 33, 36. She also began smoking marijuana, similarly supplied, in her dormitory room. Complaint at ¶¶ 33, 35. The plaintiff alleges that the resident assistants were aware of the drinking, drugs and sexual activities of the plaintiff. Complaint at ¶ 33. The plaintiff began using cocaine, ecstacy and LSD as well. Complaint at ¶ 36.

In September, 2000, school officials again met with the plaintiff to discuss curfew. Complaint at ¶ 37. She was again asked about sexual activity with the UAB football players, and the plaintiff "assured" them it was not true.[4] Complaint at ¶ 37. After plaintiff's assurances to the defendant that the rumors were not true, the school did not investigate these rumors further.[5] Complaint at ¶¶ 37-39. The plaintiff's grades fell to a 1.9 GPA and she stopped attending her classes. Complaint at ¶ 42. She began using her rent and meal money to finance her addictions. Complaint at ¶

---

[4]In an e-mail from Virginia Gauld to Ann Reynolds, president of UAB, Gauld states "Rumors regarding [plaintiff's] sexual activity continue, specifically with the football team members. [Plaintiff] continues to deny rumors. I spoke with Coach Larry Crowe regarding these rumors. Specifically, I spoke about [plaintiff's] inability to consent to sexual activity due to her age (16). Exhibit B to complaint.

[5]The court notes that the plaintiff alleges that defendant failed to contact the plaintiff's roommate/R.A. Complaint at ¶ 38. However, in plaintiff's earlier allegations, she alleged that she lived alone. Complaint at ¶ 22. The court is unable to reconcile the two allegations as they are entirely contradictory. The plaintiff apparently is alleging in the alternative that the defendant failed to provide her with a roommate and thus is culpable; or that the defendant did provide her with a roommate at Blazer Hall, but failed to contact her, and thus is culpable.

44. Although she received eviction notices in November, 2000, her parents were not notified. Complaint at ¶ 44. This was in spite of the fact that the plaintiff's mother had signed her lease. Complaint ¶ 20.

In mid-December, 2000, the plaintiff's mother became aware of the plaintiff's activities when she went to UAB to pick up the plaintiff. Complaint at ¶ 47. The plaintiff alleges that her mother "received a return call from a man who identified himself as a UAB policeman." Complaint at ¶ 48. This individual informed the plaintiff's mother that the plaintiff had broken curfew, her GPA was 1.9, she had not been attending class, and drug paraphernalia was found in her room. Complaint at ¶¶ 48-49.

Upon her return home, the plaintiff was placed by her parents in an adolescent rehabilitation center, where she spent 22 days. Complaint at ¶ 50. The plaintiff alleges that "all of the above actions and deliberate indifference to sexual harassment was (sic) so severe, pervasive, and objectively offensive that it (sic) deprived [her] of access to educational opportunities."[6] Complaint at ¶ 57. The plaintiff alleges these facts constitute sexual harassment, of which UAB was aware and failed to take

---

[6]The plaintiff also makes the allegation that "Angelo Willis, an employee of the University also committed acts of child abuse and exploitation, while on University property." Complaint at ¶ 56.

reasonable steps to end such harassment.[7]  Complaint at ¶¶ 58-59.   The plaintiff

demands 20 million dollars in compensatory damages and another 20 million dollars

in punitive damages for the alleged discrimination which she suffered.  Complaint at

¶ 65.

## II. LEGAL ANALYSIS

*Title IX*

The sole issue which the court considers on the defendant's motion to dismiss

is whether the above allegations, when taken as true, constitute a violation of Title IX,

for which the plaintiff may recover damages from the defendant.[8]  *See* 20 U.S.C. §

1681(a).  If these facts do not constitute a claim under Title IX, defendant's motion

to dismiss is due to be granted.[9]

Title IX, 20 U.S.C. § 1681 states:

### (a) Prohibition against discrimination

---

[7]The plaintiff has a parallel state court action pending in the Circuit Court of Jefferson County, Alabama based on these facts. *Benefield v. Board of Trustees, et al.*, CV 01-5363-TK. The Board of Trustees has been dismissed from that action, as has plaintiff's Title IX claim. *See* exhibit 2 to defendant's memorandum of law.

[8]The parties stipulated during the hearing that the court could dismiss the First and Fourteenth Amendment claims the plaintiff had brought in her complaint.  Transcript of May 29, 2002 hearing, at 3-4.  *See also* defendant's memorandum at 3-4.  The court shall do so by separate Order.  Additionally, the defendant does not dispute that it receives funding which subjects it to the mandates of Title IX.

[9]The plaintiff's attorney agreed at oral argument that the only issue before the court is the applicability of Title IX to the facts of this case.  Transcript of May 29, 2002 hearing at 3-4.

7

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance ....

### (c) "Educational institution" defined

For purposes of this chapter an educational institution means any public or private preschool, elementary, or secondary school, or any institution of vocational, professional, or higher education, except that in the case of an educational institution composed of more than one school, college, or department which are administratively separate units, such term means each such school, college, or department.

## A. Sovereign Immunity

The defendant argues, *inter alia*, that it has sovereign immunity pursuant to the Eleventh Amendment from an action of this sort. Defendant's memorandum at 5. Congress has directly spoken to Eleventh Amendment immunity from suits under Title IX, in 42 U.S.C. § 2000d-7. That section of the United States Code states as follows:

### (a) General provision

(1) A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal Court for a violation of ... title IX of the Education Amendments of 1972....

(2) In a suit against a State for a violation of a statute referred to in paragraph (1), remedies (including remedies both at law and in equity) are available for such a violation in the suit against any public or private entity other than a State.

8

The court finds that the constitutionality of the abrogation of immunity has been considered and upheld by numerous courts.[10] *See Davis v. Monroe County*. 526 U.S. 629, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999); *Pederson v. Louisiana State University*, 213 F.3d 858, 875-76 (5th Cir.2000); *Litman v. George Mason University*, 186 F.3d 544, 554 (4th Cir.1999); *Beasley v. Alabama State University*, 3 F.Supp.2d 1304, 1316 (M.D.Ala.1998); *Thorpe v. Virginia State University*, 6 F.Supp.2d 507 (E.D.Va.1998).

*B. Rule 12(b)(6), Fed.R.Civ.Pro.*

Finding that Title IX, as applied to the states in cases of sexual harassment, is constitutional, the court next considers defendant's argument that, under the facts of this case, the plaintiff has failed to state a claim upon which relief may be granted. *See* Rule 12(b)(6), Fed.R.Civ.Pro.; defendant memorandum at 8-11. Simply put, the defendant argues that because the sexual encounters alleged by plaintiff were consensual, no sexual harassment occurred. Defendant memorandum at 9.

Title IX clearly mandates that no funding recipient allow a student to be "subjected to discrimination." 20 U.S.C. § 1681(a). Harassment can rise to the level of discrimination. However, the question of whether voluntary participation in alcohol and drug use as well as sexual activity constitutes harassment rising to the

---

[10]Because the court accepts the proposition that the abrogation of Eleventh Amendment immunity pursuant to 42 U.S.C. § 2000d-7 was constitutional, the court shall deny the motion to certify constitutional issues to the Attorney General of the United States pursuant to 28 U.S.C. § 2403(a) (doc. 13), by separate order.

9

level of discrimination is novel.[11] The question before the court is whether a recipient of federal education funding may be liable for damages under Title IX for failing to prevent sexual activities between consenting college students when such activities interfere with class work.[12] The court can find no prior case law addressing the validity of such a claim.

### 1. Student on Student Harassment

No serious debate exists that for conduct to constitute sexual harassment, it must, at a minimum, be unwelcomed by the plaintiff. *See, e.g. Federal Jury Practice and Instructions* (5th Ed.), §§ 171.21, 171.22. Although the jury instructions note that the term "unwelcome" does not need defining, the instructions do suggest that conduct is unwelcome "if the plaintiff did not solicit or invite the conduct and regarded the conduct as undesirable or offensive." *Id.* at 218 n.4 and 224 n. 4.

The United States Supreme Court has ruled that a private Title IX action may lie against a school board in cases of student on student harassment, where the school board, as a Title IX funding recipient, has been deliberately indifferent to sexual

---

[11]The issue of the plaintiff's drug use is clearly not within Title IX as no relationship between it and gender based activity exists.

[12]The court is aware that under state criminal law, the plaintiff could not consent to have sexual relations due to her age. The court finds other districts have taken unreconcilable positions on the question of whether the inability to consent under criminal law renders voluntary actions non-consensual under federal civil law. Compare *R.L.R v. Prague Public School District*, 838 F.Supp. 1526, 1534 (W.D.Okla.1993) with *Mary M. v. North Lawrence School Corp.*, 131 F.3d 1220 (7th Cir.1998), discussed *infra* at 11-13.

harassment, despite actual knowledge of such harassment. *See Davis v. Monroe County Board of Education*, 526 U.S. 629, 640, 119 S.Ct. 1661, 1669-70 (1999). *See also Murrell v. School District No. 1, Denver Colorado*, 186 F.3d 1238, 1246 (10th Cir.1999) (stating that school district is liable only where it has made a conscious decision to permit sex discrimination, and precludes liability where the school district could not have remedied that harassment because it had no knowledge of it or had no authority to respond to it). Further, the harassment must be so severe, pervasive and objectively offensive that it deprives the victim of access to the educational opportunities or benefits provided by the school.

In other words, to prevail on her claim under Title IX, the plaintiff must establish that the defendant "acted with the intent to discriminate against her on account of gender in a federally funded program." *R.L.R. v. Prague Public School District I-103*, 838 F.Supp. 1526, 1534 (W.D.Ok.1993); citing *Guardians Ass'n v. Civil Service Comm. of City of New York*, 463 U.S. 582 n. 27, 103 S.Ct. 3221 n. 27, 77 L.Ed.2d 866 (1983). At the hearing, the plaintiff argued that the sex in question could not be consensual because the plaintiff was below the age of consent at the time the acts in question occurred.[13] Faced with an identical question in a case where an

---

[13]No criminal charges have been brought against anyone based on any of the allegations in this case. Transcript of May 29, 2002 hearing, at 49.

eighth grade, 13 year old student, had consensual sex with her basketball coach, the court stated:

> Despite plaintiffs' argument that Oklahoma's statutory rape law precludes her consent to Thorpe's advances, the Court finds that the criminality of Thorpe's actions, standing alone, have no bearing on the School Board's liability. Coercion into sexual relations gives rise to a private right of action under Title IX, *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, –, 112 S.Ct. 1028, 1037, 117 L.Ed.2d 208 (1992), but discriminatory intent must still be shown. *Guardian's Ass'n*, 463 U.S. at 607.

*Prague Public School District*, 838 F.Supp. at 1534.

Unlike the majority of cases concerning sexual harassment under Title IX, the case at bar involves student on student harassment. The case of *Davis v. Monroe County Board of Education*, 526 U.S. 629, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999), although distinguishable on its facts, is instructive. That case involved a fifth grader sexually harassing a classmate, during class. *Id.*, 526 U.S. at 633-34, 119 S.Ct. at 1667. Each of the alleged incidents was reported by the student to her mother and to her classroom teacher, however no disciplinary action was taken to prevent further harassing behavior. *Id.* The child instigating the behavior was eventually charged with, and pleaded guilty to, sexual battery for his misconduct. *Id.*

The court questions whether allowing every college student below the age of consent to have a cause of action against a state university for consensual sexual encounters possibly could be within the ambit of Title IX. Title IX does not

12

distinguish between types of behavior based on the age of the student.   In a case dealing with teacher on student harassment, the Seventh Circuit has stated that, as far as elementary school students are concerned, sexual abuse may be presumed to be unwelcome. *Mary M. v. North Lawrence Community School Corp.*, 131 F.3d 1220, 1226 (7th Cir. 1998).  The Circuit Court in *Mary M.* specifically declined to opine as to whether secondary school students could welcome sexual advances in harassment claims arising under Title IX. *Id.*, at n. 6.

The *Mary M.* Court did state that a child which could not consent to sex in a criminal context could not be said to welcome it in a civil context either. *Id.*, 131 F.3d at 1227.  The court in *R.L.R. v. Prague Public School District I-103*, 838 F.Supp. at 1534, concluded just the opposite, finding the criminal and civil contexts unrelated. Of course, those cases both concern elementary school children involved with employees of the school, and are thus of limited instructive value to this court.  In the State of Alabama, a fifteen year old cannot consent to sex, so any sexual relations are not consensual. § 13A-6-62(a)(1), *Code of Alabama* 1975, as amended.[14]  A sixteen

---

[14]Section 13A-6-62, Ala.Code, states in relevant part:
(a) A person commits the crime of rape in the second degree if:
    (1) Being 16 years old or older he or she engages in sexual intercourse with a member of the opposite sex less than 16 and more than 12 years old, provided, however, the actor is at least two years older than the member of the opposite sex.

The Alabama Statute criminalizing this conduct not only takes into consideration the immaturity and lack of judgment of the victim, but also that of the offender.  The age, immaturity

year old can consent, so the exact same behavior as that of a fifteen year old may be consensual.  However, Title IX does not create separate rights for individuals based on their age.   Rather, Title IX creates the right not to be subjected to sexual harassment when the school has knowledge of that harassment, fails to prevent it, and such harassment interferes with the student's education.

   *2. Creation of a Special Duty*

The plaintiff also argues that a college has a special duty to minors under Title IX.  No such duty is apparent from the face of the act.  The court, upon consideration of this argument, finds it unsupportable.  Many, many students begin college as minors.[15] Even assuming an additional duty to minors, UAB cannot be held liable for the actions of its students – rather, the proper framing of the issue is whether the defendant is liable for its *own* decision to remain idle in the face of known student-on-student harassment in its schools.   *Davis*, 526 U.S., at 641, 119 S.Ct., at 1670

---

and lack of judgment of the offender are the determining factors in establishing an absence of culpability, not merely the age of the victim.  Commentary to § 13A-6-62, Ala.Code.

   [15]In Alabama, the age of majority is 19 years old. § 26-1-1, Ala.Code. The court takes judicial notice that most college freshmen are 18 years old, and quite often 17 years old.  The Alabama Legislature has acknowledged the number of 17 year olds on college campuses by its adoption of § 26-1-5, Ala.Code, which states "Notwithstanding any other law to the contrary, the age of majority for the purposes of contracting for educational loans for college level education and above, within the State of Alabama, shall be 17 years of age."
   Additionally, the court notes that the Alabama Legislature believes a 14 year old is mature enough to marry (with parental consent if a first marriage) in the State of Alabama.  *See* §§ 30-1-4, 30-1-5 Ala.Code.

(emphasis in original); *Murrell*, 186 F.3d at1246.  In other words, the defendant can have liability only where its own deliberate indifference effectively causes the discrimination.  *Davis*, 526 U.S., at 642, 119 S.Ct., at 1671; citing *Gebser v. Lago Vista Independent School Dist.*, 524 U.S. 274, 291, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998).  Unlike the plaintiff in *Davis*, the plaintiff here never complained to her parents and never complained to the UAB administration.  In fact, when confronted with rumors of her rampant sexual activity by UAB officials, the plaintiff lied and stated such rumors were untrue.

The Eighth Circuit was confronted with similar facts in *P.H. v. School District of Kansas City, Missouri*, 265 F.3d 653 (8th Cir.2001).  There, a male student was involved in a sexual relationship with a male teacher which lasted over two years.  The student hid the relationship and did not complain about sexual misconduct until the relationship had ended.  The court stated that the record "contains no evidence from which we can properly infer that the [school] had notice of any sexual contact between the two, let alone a pattern of sexual misconduct ...."[16]  *Id.* at 660.

---

[16]In *P.H.*, the plaintiff brought claims under both Title IX and 42 U.S.C. § 1983.  While the Eighth Circuit made the above quoted observation in relation to the plaintiff's § 1983 claim, the Court later states in its opinion that the same lack of notice applied to the plaintiff's Title IX claim.  *P.H. v. School District of Kansas City*, 265 F.2d at 661-662 (requiring actual notice and an official decision not to remedy the violation).

Hence, the court finds the question of whether the facts of this case create Title IX liability must be answered in the negative. While other courts have addressed the issue of consensual sexual relations between elementary school and junior high school students, this court finds those cases distinguishable on their facts from that which is before this court. Clearly, college students are uniquely different from high school, junior high school and elementary school students. This court can find no notice to the defendant from which it should have been aware it stood *in loco parentis,* nor does the court believe the creation of such a duty is in the public interest. In *Hartman v. Bethany College*, 778 F.Supp. 286, 293-94 (N.D.W.V.1991), the District Court addressed the issue of whether a university has an *in loco parentis* relationship with its minor students. That Court concluded that parents and students do not expect colleges to play a role as surrogate parents. *Id.* at 294. The court stated:

> It is not reasonable to conclude today that seventeen year old college students necessarily require parental supervision. If they did, society might place more limitations upon the ability of a minor to attend college than currently exist. A college freshman is just that; whatever his or her age. A college does not stand *in loco parentis* to its seventeen year old college freshmen.
> ....
>
> The decided cases from all jurisdictions reflect a strong trend in this nation against imposing an *in loco parentis* relationship between colleges and their students.

*Id.* at 294.

16

The Supreme Court has observed that 'the nature of [the State's] power [over public schoolchildren] is custodial and tutelary, permitting a degree of supervision and control that could not be exercised over free adults." *Davis*, 526 U.S., at 646, 119 S.Ct., at 1673. *See also Mary M.*, 131 F.3d at 1226. While the plaintiff here cannot be considered an adult, she certainly is not a public schoolchild either.[17]

The court notes an enormous chasm between the terms "sexual harassment" and "sexual misconduct." Title IX only speaks to the former. While sexual misconduct may form the basis of illegal acts, and subject the perpetrator to liability, that does not make such acts into sexual harassment. To constitute sexual harassment, the behavior in question must be unwelcome. *See e.g., Meritor Sav. Bank v. Vinson*, 477 U.S. 57,

---

[17]The plaintiff does not specifically use the term "*in loco parentis*." However, the court finds that this is the duty she asks this court to find the defendant violated. For example, at the hearing the plaintiff argued:

> This is a person that this university said we will protect and watch over. Well, I would expect that a university who lures a minor to campus – maybe lure is a strong word, but they brought her there. I would expect the university would, I don't know, periodically say how are you doing, Brittany, how are your grades, maybe going to the English professor and saying how is she doing.
>
> I mean, they wanted her to come. They publicized her being there, then they acted so deliberately indifferent. In fact, not only did they not treat her like a minor or as another student, frankly, they went out of their way to hide what was occurring to her from her parents. They went out of their way to protect the culprits in this case, all, as we allege in the complaint, to save the darn football team.
>
> That's what occurred. That's why a cop would get on a bus and say be careful. That's why that occurred. All they had to do in July was make the phone call they promised they would make. We have a problem, Mrs. Benefield, we have a big problem. You better come down and talk to us.

Transcript at 34.

68, 106 S.Ct. 2399, 2406, 91 L.Ed.2d 49 (1986); *Morgan v. Massachusetts General Hospital*, 901 F.2d 186, 192 (1st Cir. 1990).

B. The <u>*Davis*</u> Standard

The Supreme Court stated the elements for liability of the funding recipient for student on student harassment are: (1) deliberate indifference to sexual harassment, (2) of which they had actual knowledge, (3) of conduct that is so severe, pervasive, and objectively offensive (4) that it can be said to deprive victims of access to the educational opportunities or benefits provided by the school.[18] *Davis*, 526 U.S. at 650, 119 S.Ct. at 1675. To fall within the proscription of Title IX, the harassing behavior must effectively deny the victim-student equal access to an institution's resources and opportunities. *Id.* at 651. The Court also notes that peer harassment is less likely to satisfy the requirements of Title IX than is teacher-student harassment. *Id.* at 653.

The *Davis* Court concluded that where the misconduct occurred during school hours, on school grounds, and mainly in the classroom, the misconduct takes place under the operation of the funding recipient. *Id.* at 646, 119 S.Ct. at 1672. On this basis, among others, this court finds *Davis* distinguishable from the facts before it.

_____

[18]*Davis* uses as an example male students physically threatening their female peers every day, successfully preventing them from using a particular school resource, where district administrators are aware of the daily ritual, but deliberately ignore requests for aid from the female students wishing to use the resource. The district's knowing refusal to take any action would fly in the face of Title IX's core principles. *Id.,* at 650-51, 119 S.Ct. at 1675.

At the hearing on the motion to dismiss, the plaintiff agreed with the court that *Davis* was distinguishable from this case. Transcript at 20.

### 1. Deliberate Indifference to Sexual Harassment

The court in *Davis* stated that "in certain limited circumstances" a cause of action exists for "deliberate indifference to known acts of harassment" as intentional violations of Title IX, capable of supporting a private damages action, where the harasser is a student rather than a teacher. *Id.,* at 643, 119 S.Ct. at 1671. The "'deliberate indifference' standard and the language of Title IX narrowly circumscribe the set of parties whose known acts of sexual harassment can trigger some duty to respond on the part of funding recipients." *Id.* at 644, 119 S.Ct. at 1672. The court further explained:

> The statute's plain language confines the scope of prohibited conduct based on the recipient's degree of control over the harasser and the environment in which the harassment occurs. If a funding recipient does not engage in harassment directly, it may not be liable for damages unless its deliberate indifference 'subject[s]' its students to harassment. That is, the deliberate indifference must, at a minimum, 'cause [students] to undergo' harassment or 'make them liable or vulnerable' to it .... Moreover, because the harassment must occur 'under' 'the operations of' a funding recipient ... the harassment must take place in a context subject to the school district's control."[19]

---

[19]The court notes the use of the term "school district" used by the Supreme Court in defining this cause of action under Title IX. This court finds from the use of such a term that the Court did not specifically address whether this cause of action could extend to universities. See *Davis,* 526 U.S. at 649, 119 S.Ct. at 1674 and dissent, *id.* at 667-68. 119 S.Ct. at 1683. Given this limitation, the court does not find *Davis* to be ample notice to the defendant here it could be

*Id.* at 644-45, 119 S.Ct. at 1672.  The Court stated that these factors "combine to limit a recipient's damages liability to circumstances wherein the recipient exercises substantial control over both the harasser and the context in which the known harassment occurs.  Only then can the recipient be said to 'expose' its students to harassment or 'cause' them to undergo it 'under' the recipient's programs."  *Id.*  The purpose of such a high standard to establish knowledge is to prevent the risk that the recipient would be liable in damages "not for its own official decision but instead for its employees' independent actions."[20]  *Davis*, 526 U.S., at 643; quoting *Gebser*, 524 U.S. at 290-91.  Thus, "liability properly attaches when the misconduct 'takes place while the students are involved in school activities or otherwise under the supervision of school employees .... the first two prongs of the *Davis* analysis require that a school official who possessed the requisite control over the situation had actual knowledge of, and was deliberately indifferent to, the alleged harassment.'"  *Murrell*, 186 F.3d at 1247, quoting *Davis,* 119 S.Ct. at 1672-73.

The plaintiff argues that the defendant had a duty to investigate the rumors in spite of plaintiff's denials of any illicit activity, and further, to notify the plaintiff's

---

sued for consensual sexual activity between college students, as argued by plaintiff.  Transcript of May 29, 2002 hearing, at 15.

[20]Thus, the court finds that the plaintiff's allegations of her involvement with a UAB employee can create no "automatic" liability for the university as no *respondeat superior* liability is created by Title IX.  *See* complaint at ¶ 56.

parents of the rumors.[21]  The court notes the potential for an invasion of privacy action against a university for calling a student's parents to inform them of rumors the student denies.  Additionally, the defendant does not have a duty to purge its school of actionable peer harassment or a duty to engage in particular disciplinary action. *Davis*, 526 U.S. 648, 119 S.Ct. at 1673-74.

In *Davis*, the court states that "the deliberate indifference must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it ..." *Id.*, at 644-45.  Here, however, no deliberate indifference allowed the plaintiff to undergo harassment.   Rather, the plaintiff relies on her own voluntary actions to create harassment to which she alleges the defendant was deliberately indifferent.[22]

---

[21]At the hearing, plaintiff's counsel stated: "I'm reading from what was attached, the student handbook. This is under their sexual harassment policy. UAB's duty to protect employees and students exists when UAB supervisory personnel know of or have reason to know of unreported sexual harassment ...." Transcript of May 29, 2002 hearing, at 16-17. The student handbook has not been provided to the court as an attachment to any pleading (or in any other form) and thus the court has not considered the contents of any such handbook.

[22]The plaintiff alleges in her complaint that the RA, Angela Ward, scheduled a meeting at Blazer Hall where she announced that plaintiff was the "15 year old they had heard about. After that meeting, a number of University football players began initiating conversations with [plaintiff]." Complaint at ¶ 23. The plaintiff further alleges "[n]ot long after this pronouncement she was approached by several *other* football players.  It was as a result of their encouragement that she had her first beer; conveniently provided by them (emphasis added)." Complaint at ¶ 24. The court can only conclude from these allegations that the football players who encouraged the beer consumption were not present at the meeting where plaintiff was introduced as "the 15 year old."

The plaintiff wishes to have this court allow her to drink beer, albeit under encouragement, allow that to escalate into drug use and sexual encounters with other students and one UAB employee, deny such behavior when investigated by UAB's responsible officials,

21

This court will not impose a duty on colleges and universities to ferret out possible sexual activity on the theory that it *may* constitute harassment after a student, not once, but twice, denies any such activity. The material fact that the plaintiff denied the behavior, alleged in plaintiff's complaint, distinguishes this case from other Title IX, peer on peer harassment cases. This is especially true in the facts before this court, where the plaintiff's mother was informed her daughter was hosting male guests in her dorm room. The university official who called was told that the plaintiff's parents trusted her judgment.[23] Furthermore, in spite of the plaintiff's denials of her behavior, the defendant followed up several weeks later and again asked whether the rumors were true. Plaintiff denied them a second time. The court cannot find, given the school's attempt to ascertain the truth of the rumors and the plaintiff's multiple denials of the same, that the school was deliberately indifferent. *See, e.g., Davis v. DeKalb County School District*, 233 F.3d 1367, 1374-75 (11th Cir.2000).

The court finds that, regardless of their age, a college does not have the same obligation to its students as does a high school. Even though a 15, 16 or 17 year old

---

not press criminal charges against the alleged sex offenders, but now seek damages for 40 million dollars for not being given an educational opportunity.

[23]The court questions whether such a call should have put the plaintiff's parents on notice that perhaps an inquiry as to their daughter's behavior should be made by them. This court will not find that parents may abrogate any responsibility for their child's actions or morality because their child is no longer under the parents' roof, but at the same time demand special protections for such child in a college setting because of the child's age. The effect would be to place a university *in loco parentis*, which this court will not do. *See infra* at 23-25.

may be found at either institution, the institutions have uniquely different obligations to their students, regardless of the overlap in ages. The Court in *Davis* recognized this distinction, stating that "[a] university might not, for example, be expected to exercise the same degree of control over its students that a grade school would enjoy ... and it would be entirely reasonable for a school to refrain from a form of disciplinary action that would expose it to constitutional or statutory claims." *Id.* at 649, 119 S.Ct., at 1674. Furthermore, attendance in high school or an equivalent institution, until a specific age, is mandatory. Ala.Code § 16-28-3. In contrast, every student, regardless of age, attends college voluntarily.[24] While colleges can fail students for not attending class, no coercive measures to ensure their attendance exist, such as truancy laws do for high school. *See e.g.,* Ala.Code § 12-15-1, *et seq.* Rather, colleges are entitled to make an assumption that each and every student attending the institution is mature enough to decide whether to attend class, with whom to socialize, and what their moral standards will be.

The issue of the status of college students has been resolved for many years. For example, in *Booker v. Lehigh University*, 800 F.Supp. 234 (E.D.Penn.1992), the plaintiff sued the university for injuries she sustained after becoming intoxicated at

---

[24]In this case, Exhibit C to plaintiff's complaint verifies the plaintiff's desire to attend UAB. It states "I wanted to bring you up to date on the student we met with last year who was fifteen years old who wanted to come to college ...."

an on campus fraternity party, on the theory that Lehigh was liable for the actions of

its students *in loco parentis*. The Court in *Booker* turned to the case of *Bradshaw v.*

*Rawlings*, 612 F.2d 135 (3rd Cir.1979) *cert. denied* 446 U.S. 909, 100 S.Ct. 1836, 64

L.Ed.2d 261 (1980), where the Court stated;

> Our beginning point is a recognition that the modern American college
> is not an insurer of the safety of its students. [T]he authoritarian role of
> today's college administrators has been notably diluted in recent
> decades. Trustees, administrators, and faculties have been required to
> yield to the expanding rights and privileges of their students .... College
> students today are no longer minors; they are now regarded as adults in
> almost every phase of community life ... Regulation by the college of
> student life on and off campus has become limited. Adult students now
> demand and receive expanded rights of privacy in the college life ...
> College administrators no longer control the broad arena of general
> morals ... But today students vigorously claim the right to define and
> regulate their own lives.
> ....
> Thus, for purposes of examining fundamental relationships that underlie
> tort liability, the competing interest of the student and of the institution
> of higher learning are much different today than they were in the past.
> [T]he change has occurred because society considered the modern
> college student any adult, not a child of tender years.

*Bradshaw*, 612 F.2d at 138-40. Similarly, in *Millard v. Thiel College*, 611 A.2d 715

(Pa.1992), where a freshman was killed in a motorcycle accident after consuming

alcohol, the Court found that "[I]t is clear that the college also accorded certain

amounts of responsibility to college students as intelligent, responsible members of

society." *Id.* at 717. That Court further stated that an alcohol policy being

implemented by the school did not create a special duty to control the actions of

24

students who acquired alcoholic beverages even though they were underage.  *Id.* at 721.

In fact, the plaintiff argues that what the defendant really did wrong was "treated her as a normal student."[25]  Transcript at 24.  UAB placed no barriers to plaintiff's ability to achieve in the college setting.  The plaintiff does not allege that she was treated differently from any other student based on her gender, but rather that UAB failed to stop the plaintiff from harming herself.  The defendant did not furnish the plaintiff with the alcohol or drugs she claims caused her to engage in sexual activities.[26]  Finding that the college had a duty to prevent the plaintiff from engaging in illegal behaviors would be to impose a duty *in loco parentis*.  *See Booker*, 800 F.Supp. 240.  Even if this court was willing to create such a duty, which it is not, such a duty would still not put these facts into Title IX's prohibitions.[27]

---

[25]While plaintiff's arguments as to liability are rather fluid, the issue of whether the defendant had a special, or additional, obligation to the plaintiff because the school recruited her *due to* her age is raised by the plaintiff repeatedly.  *See e.g.* transcript at 24, 28-29, 38-39.  The court finds the plaintiff is actually asking that Title IX be applied to her particular circumstances, although it would not apply to a seventeen year old under identical circumstances.  While causes of action may exist under state law against both UAB and the individuals involved, the court questions whether Title IX should be extended to create a national rule that a 15 year old willingly taking drugs and having sex on a college campus can then sue the school for failing grades but a 17 year old could not.

[26]As the court in *Booker* noted, the University did not supply the alcohol or assist in the plaintiff's drinking.  *See Booker*, 800 F.Supp. at 241.

[27]The plaintiff alleges that the defendant had a duty to report the conduct in question pursuant to § 26-14-1, *et seq*., Ala..Code.  The court notes that no mandatory duty is imposed on defendant pursuant to § 26-14-3, and even if defendant had such a duty, the statute only requires

## 2. *Actual Knowledge*

Distinguishing this case from other Title IX cases of student on student harassment, among other things, is the question of whether the defendant had actual knowledge of the conduct in issue. *See, e.g., Gebser v. Lago Vista Independent School District,* 524 U.S. 274, 288, 118 S.Ct. 1989, 1998, 141 L.Ed.2d 277 (1998) (where the Court held that knowledge by principal of inappropriate comments not sufficient for notice). The plaintiff argued at the hearing that the RA "knew that her room reeked of marijuana." Transcript at 33. This court is unable to make the leap from an RA arguably being aware that the plaintiff was smoking marijuana to the defendant having actual notice that the plaintiff was suffering from harassment based on her sex which was so severe and pervasive that it interfered with her education.

The court finds this case has some similarities to *Freeman v. Busch,* 150 F.Supp.2d 995 (S.D.Iowa 2001), although that case was not brought under Title IX. In Freeman, the plaintiff consumed quantities of alcohol in a "dry floor" of a dorm

---

reporting of known or suspected child abuse. The plaintiff here denied she was the subject of any sexual abuse when the defendant attempted to investigate the rumors about her. Thus, the plaintiff's allegation that reporting under § 26-14-1, *et seq.,* would have caused an investigation and that investigation "would have demonstrated the abuse, identified some of the perpetrators, caused the parents to remove their child from that environment and prevented continued, abhorrent behavior toward this child" is highly suspect. Plaintiff's claim that her parents would have removed her from the environment sooner had they known of her actions, is irreconcilable with plaintiff's claim that UAB knowingly allowed sexual harassment, preventing her from receiving an education.

room.  She became intoxicated to a point of vomiting and passing out.  Her then

boyfriend, defendant Busch, took her to his dorm room, and informed the resident

assistant that she was passed out on his bed.  *Id.* at 998.  Busch had sex with the

plaintiff, and invited two other men to fondle her.  Both Busch and the RA were

student employees of the defendant college.  *Id.* at 999.  The court concluded that

colleges are not "insurers of the safety of their students, nor their guests .... A college

is an educational institution, not a custodian of the lives of each adult, both student

and non-student, who happens to enter the boundaries of its campus.  A contrary result

'would directly contravene the competing social policy of fostering an educational

environment of student autonomy and independence.'"  *Id.* at 1002, citing *Univ. of

Denver v. Whitlock*, 744 P.2d 54, 62 (Colo.1987).

Even if the allegation concerning marijuana put the defendant on notice the

plaintiff was using illegal drugs, such knowledge does not, in any way, create actual

knowledge that the plaintiff is being subjected to severe, pervasive sexual harassment

which interferes with her education.[28]  The plaintiff recognizes that the *Davis* court did

not hold the plaintiff could pursue a cause of action against her school district because

---

[28]Similarly, while the plaintiff alleges actual notice because she had sexual encounters
with an employee of UAB, the Supreme Court has stated that "the knowledge of the wrongdoer
himself is not pertinent to the analysis" of actual notice.  *Gebser v. Lago Vista Independent
School District*, 524 U.S. 274, 291, 118 S.Ct. 1989, 2000 (1998).  Thus, the court finds that
plaintiff's statement that a UAB employee was one of the individuals who committed the alleged
acts is not pertinent to the question of actual notice to UAB. See complaint at ¶ 56.

of another student's actions, but rather that the cause of action resulted from the school's "own decision to remain idle in the face of known student-on-student harassment." Plaintiff's reply in opposition (doc. 9) at 8.

Arguably, various individuals at UAB had some knowledge of various wrongs, crimes and indiscretions committed by the plaintiff and others. However, the plaintiff is asking the court to impute knowledge to the defendant that the totality of these acts constituted peer on peer sexual harassment of the kind proscribed by Title IX. This is exactly what other courts have stated they will not do. Each and every court to consider peer on peer harassment has required actual notice to a person in a position to prevent further harassment. *See e.g., Davis*, 525 U.S. at 650 (repeated harassment complaints to teacher and principal); *Vance v. Spencer County Public School District*, 231 F.3d 253, 259 (6th Cir. 2000) ("Both Alma and her mother made repeated reports ... verbally and in writing..."); and *Murrell, infra*. In *P.H. v. School District of Kansas City*, the court summarized the elements of a harassment claim as:

> In other words, a school district must have had actual notice of [ ] sexual harassment of a student and the school district must have made an official decision not to remedy the violation in order for liability to attach to the school district.

*Id.*, 265 F.3d at 660. In *Floyd v. Waiters*, the Eleventh Circuit described the actual notice requirement as "first, some supervisor with authority to take corrective action was placed on notice of the bad conduct. Second, the supervisor possessing this

28

authority was a school official high enough up in the chain-of-command that his acts constitute an official decision by the school district itself not to remedy the misconduct." *Id.*, 171 F.3d 1264 (11th Cir.), *cert. denied*, 528 U.S. 891, 120 S.Ct. 215, 145 L.Ed.2d. 181 (1999). Plaintiff has failed to even allege that such notice exists here.

Further, taking the plaintiff's complaint as true, the only barrier to the plaintiff attending classes was her own actions. Not once did the plaintiff complain, tell her parents of any problems, or inform anyone at UAB that she was being harassed. This distinguishes her case from *Davis, supra*, and *Murrell*, 186 F.3d at 1247 (where the student's mother alleged she called the principal). Rather, the plaintiff here lied to UAB, hid her actions from her parents, and apparently chose not to attend classes. Now she claims these actions entitle her to 40 million dollars.

In *Davis v. DeKalb County School District*, the plaintiffs were molested by a seventh grade physical education teacher during the course of a school year, but did not report the behavior to any parent or teacher. The Court found that notice to the school in the form of a complaint from another student about another incident was insufficient to create actual notice under Title IX for these plaintiffs' complaints. *Davis*, 233 F.3d 1367, 1372-73 (11th Cir.2000). Additionally, the court in *Davis* noted, "there is simply no evidence that DCSD had 'actual notice" of Mency's

conduct until one of the Plaintiffs was confronted by the school detective .... It is undisputed that Mency's sexual abuse of the Plaintiffs occurred in secret, where no one could observe what he was doing." *Id.* at 1374. Having considered the plaintiff's allegations as true, the court is unable to conclude that UAB had actual knowledge, as opposed to rumors, of other students' behavior in relationship to the plaintiff.

### 3. Severe, Pervasive and Objectively Offensive Conduct

Even if the court assumes that the defendant had actual knowledge of the plaintiff's behavior, this case is still distinguishable from other cases brought under Title IX. Unlike other Title IX cases, the plaintiff here insists that the defendant should have notified the plaintiff's parents concerning the plaintiff's own behavior. The plaintiff insists that the defendant's failure to protect her from herself and other students creates liability under Title IX. The plaintiff insists that the defendant's failure to investigate allegations of her own wrongdoing, as well as those of defendant's other students, makes it deliberately indifferent to her rights under Title IX.[29] Unlike public schools, state universities often have thousands of students, if not tens of thousands. Placing an obligation on a university to check dorm rooms, prevent underage sex, underage drinking, and all use of illegal drugs, or allow Title IX

---

[29]The court does not delve into the fourth prong of *Davis* – whether the alleged indifference and actual knowledge of severe, pervasive and objectively offensive conduct "can be said to have deprived the plaintiff of access to educational opportunities" as the parties to this litigation do not dispute that the plaintiff stopped attending classes of her own volition.

liability is simply to open the courts to the floodgates of litigation, not to mention of questionable legality. Clearly, college students have some expectation of privacy in their dorm rooms. *See American Future Systems, Inc. v. Pennsylvania State University,* 553 F.Supp. 1268, 1282 (M.D.Penn.1983); citing *Piazzola v. Watkins,* 442 F.2d 284, 289-90 (5th Cir.1971). In *Piazzola,* where the defendant was arrested for marijuana in his dorm room, the court stated:

> A dormitory room is analogous to an apartment or a hotel room. It certainly offers its occupant a more reasonable expectation of freedom from governmental intrusion than does a public phone booth. The defendant rented the dormitory room for a certain period of time, agreeing to abide by the rules established by his lessor, the University. As in most rental situations, the lessor, Bucknell University, reserved the right to check the room for damages, wear and unauthorized appliances. Such right of the lessor, however, does not mean McCloskey was not entitled to have a 'reasonable expectation of freedom from governmental intrusion' or that he gave consent to the police search, or gave the University authority to consent to such a search.
> ....
>
> [W]e must conclude that a student who occupies a college dormitory room enjoys the protection of the Fourth Amendment....

*Piazzola v. Watkins,* 442 F.2d 284, 287-289 (5th Cir.1971).

The court is aware that the plaintiff here argues her case is special. *See e.g.,* plaintiff's reply at 10-12. However, this court, while considering each case on its own merits, must consider whether extending the law to new situations was intended by Congress or other courts. This court cannot make up law to apply to one person under

one unique set of circumstances.  If a proposed application of the law cannot be applied to all persons in similar situations, it should not be so extended.  Here, the plaintiff does not want the court to find that all college student's parents should be informed if they are having sex and taking drugs rather than going to class, but rather only fifteen year olds, who have been sheltered, who the university openly recruits and then promises to look after.[30]

However, the court must consider sixteen year olds in the same position, or more worldly fifteen year olds, in the same position.  This court is unable to ascertain circumstances under which the facts of this case should fall within the ambit of *Davis* and Title IX, but a 17 year old who engages in the exact same behavior would not.  For that matter, should any such ruling not also apply to a 21 year old on the theory that the university, by its deliberate indifference to her plight, allowed her to engage in behavior so horrific that it interfered with her attending class and therefore must be harassment which prevented her from obtaining an education?  What if this plaintiff engaged in the behavior in question one year after beginning college, rather than one quarter?  What if the plaintiff was a fifteen year old male who freely had sex, consumed alcohol and abused drugs with members of the university's female softball

---

[30]At the hearing, the defendant pointed out that, in a sense, all college students are recruited as they all have to be admitted.  The defendant additionally argued a school in no way enhances its obligations under Title IX by recruiting a particular student.  Transcript at 6.

team before failing out of school.  This court is unable to conclude that Congress, in enacting Title IX, meant to create liability in public universities for the willing actions of college students, regardless of their age.[31]  Even if the court was willing to start down this "slippery slope," the court doubts a conclusion of *gender* based discrimination could be reached.  As previously noted, the plaintiff's arguments focus on her age, not her gender.  In essence, the plaintiff asks this court to use Title IX to make colleges enforcers of moral standards for fifteen year olds, which this court will not do.

### III. Conclusion

The court finds, accepting the material facts of plaintiff's complaint as true, UAB did promise to provide extra protections for this plaintiff because of her age. However, the court, finding that such a promise does not, in any way, invoke Title IX, does not speculate on other possible causes of action the plaintiff could have.  As the only claim raised in plaintiff's complaint is under 20 U.S.C. § 1681, and the court finds the facts of this case do not support such a claim, the court finds this case is due to be dismissed under Rule 12(b)(6), Fed. R.Civ.Pro.

---

[31]Plaintiff's theory seems to be that there is Title IX liability because of her age, not because of her gender.  In her pleadings and arguments, the plaintiff repeatedly states that because of *her age*, the college owed her a special duty; and that because of *her age*, the college promised to take care of her.

It is therefore **ORDERED** that defendant's motion to dismiss is **GRANTED** and this case is **DISMISSED WITH PREJUDICE**.

**DONE** and **ORDERED** this the ⟨22⟩ day of July, 2002.

Inge P. Johnson
United States District Judge